Folger, J.
 

 The note sued upon, and the agreement given in evidence by the defendant, are cotemporaneous writings between the same parties upon the same subject-matter, and the action being between the same parties or representatives, they may be read and construed as one paper.
 
 (Hunt
 
 v.
 
 Livermore,
 
 5 Pick., 395;
 
 Draper
 
 v.
 
 Snow,
 
 20 N. Y., 331.) So doing, it appears that the plaintiffs’ intestate advanced to the defendant $2,000. It is to be inferred from the papers, and is fully shown from the testimony, that Wells and the defendant were about to commence or had then lately commenced an adventure, which though promising to them a profitable result, was contingent and uncertain in that respect. It strikes us on reading the agreement, that it is not expressed in terms that the defendant will repay the advance. He
 
 *328
 
 makes no explicit promise thereto, hi or is there any provision that the interest on the whole sum is to be paid. The plaintiff’s intestate did not look to the legal interest for his recompense for his advance. But on the contrary, it appears, that there was other consideration therefor. One was the transfer by the defendant of his interest in a guano island. Another was that when the $2,000 should have been repaid to the plaintiffs’ intestate, he was still to receive one-half of all proceeds to which the defendant would be entitled by reason of his copartnership with Wells. A- transfer is also to be made of the bill of sale from Wells to the defendant, to be held in the first instance as a collateral security; but to become absolute at the end of six months, at which time substantially the note would likewise become due if the $2,000 was not by that time repaid. The plaintiffs’ intestate is also empowered to receive all the defendant’s share of the profits, which might accrue from his business with Wells, until payment of the $2,000.
 

 From all of these provisions it is evident that the advance of money to the defendant was not, nor was any part of it, an ordinary loan to him in the usual course of business to be repaid at a fixed time with interest.
 

 ' The plaintiffs’ intestate stipulated for an advantage which might be greater than the repayment of the money advanced with interest at the rate allowed by law. He also took the risk that he might fail in this his expectation. He might receive again the whole money advanced and a remunerative profit upon its use, but he might not. It was dependent upon the success, of the adventure. If it was successful he would be repaid the whole amount and a profit greater than the interest. If it was unsuccessful and the property put in his hands as collateral security did not avail enough, he must sustain the loss save so far as this note would protect him therefrom.
 

 It seems then, that the plaintiffs’ intestate took some stake in the hazard of the enterprise; and we are prepared apart from any language^ that effect in the agreement, for the claim
 
 *329
 
 of the defendant that the intestate was to incur the risk of the loss of one-half of the advance, and that the note though absolute in form, was really given to secure against the loss of the other half and the interest thereon, and for this only. Such indeed seems the plain language of the agreement: “ To give said Theodore Rogers my promissory note, for one thousand dollars, to secure said Theodore Rogers against one-half of the loss that the said capital of two thousand dollars * * "x" may sustain by the hazards of said business.” As the whole loss which Rogers could sustain would be in legal contemplation, but the amount advanced and the legal interest thereon, the half of such loss could be but $1,000 and the legal interest thereon. For the contingency of the loss of this, the note was to provide, and did provide, and for naught else. But before an action can be maintained against the defendant upon the contract shown by these two writings, there must be a loss sustained by Rogers or his representatives, and such loss must be shown. Eb recovery can be had against the defendant to an amount greater than one-half of that loss, and, be the loss what it may, greater than $1,000 and interest.
 

 When we turn to the testimony in the case, it appears that Rogers received at least $1,325 from the avails of the property sold by the defendant. Without making an exact calculation of interest, for which the data are not given in the case, it would seem that after applying this, Rogers could not lose more than $700. And this would be the result, without considering whether he or Ms representatives were not first bound to convert, or to seek to convert into money, the other pro perty received by the defendant from the effects of the enter prise. Leaving this question aside, the loss would not exceed the amount named. One-half of this and no more, could be recovered of the defendant.
 

 But the court directed a verdict for a sum of $675 and the interest thereon. Manifestly this was an erroneous disposition of the case, and the General Term was correct in setting aside the verdict and ordering a new trial.
 

 
 *330
 
 The proper and discreet course for the plaintiffs would have been to have gone down to the circuit again, and have secured a verdict for as much as they could have proven their loss to have been. But they have preferred the hazardous course of an appeal to this court, with a stipulation for a judgment absolute against them if the appeal is not
 
 successful;
 
 and such must be the result.
 

 The judgment of the General Term must be affirmed, and judgment absolute ordered for the defendant against the plaintiffs, with costs.
 

 All concur.
 

 Judgment accordingly.