DANIEL M. DUNHAM *vs.* BOSTON & MAINE RAILROAD COMPANY.

Penobscot.    Opinion July 21, 1879.

*Common carrier.   Forwarder.*

When a railroad company receives goods from a connecting road to be transported to the owners, it is bound to forward them forthwith; and they cannot justify their detention on the ground that, by their regulations, goods so received are not to be forwarded until the receipt of a bill of back charges, and that no such bill accompanied the goods.

ON REPORT.

CASE for damages for the detention and non-delivery, and the not forwarding, within a proper and reasonable time, of a car of mowing machines and parts of mowing machines, whereby the plaintiff was unable to fill his contract for and sell forty-five machines, and to use the parts in repairing other machines.

Plea, general issue.

The following facts were agreed :

In the summer of 1876, a car containing mowing machines and parts of mowing machines was shipped from Little Falls, N. Y., to the plaintiff, directed to Bangor, Maine.

After coming over various connecting railroads, in the ordinary course of transportation, the car arrived in Boston over the Fitchburg railroad, July 1, 1876 ; and on that day (which was Saturday), and probably in the afternoon, it was placed by the latter

company on the track of the defendant company in Charlestown, Mass., at usual place of transfer between the roads, and what is called a memorandum bill was left at the crossing man's house near by. No notice was given of the same by the servants of the Fitchburg company to the servants of defendant company, and it is not customary to give such notice, each company taking cars which they find upon their track.

On July 3, 1876, the servants of defendant company took said car into their possession, and got the memorandum bill where it had been left. The regular way-bill of the freight in said car was, by mistake on the part of some servant of the Fitchburg company, delivered on said July 3 at the freight office of the Eastern railroad company, in Boston, and was not delivered to defendant company until July 11, 1876, when it was delivered at their general freight office in Boston.

Said car was taken by defendant company, on said July 3, over the line of their road to Portland, Maine, reaching there on the morning of July 4. It remained in Portland on the track of defendant company until July 12, 1876, and was not meanwhile offered to the Maine Central railroad company, the next connecting carrier. On July 12, 1876, the car was delivered to said Maine Central company by defendant company, and on July 13 was brought through to Bangor, the place of its ultimate destination.

It was also admitted that, by due course of transportation, the car would have arrived July 5, but did not in fact arrive until July 14, when, as plaintiff contended, the term of sales for that season had passed and the goods not worth more than forty per cent of their market price when ordered.

In defense it was admitted that C. L. Hartwell, now, and in July, 1876, the general freight agent of said Fitchburg company, would testify that:

"The usual and customary method of transacting business between connecting lines of railroad, when freight is transported over such connecting lines, is this: When the freight has been carried over one road, the yardman, so called, at the terminus of that road delivers the car containing the freight to the yardman

of the next connecting road, at the same time giving him a mem-
orandum bill, so called, which bill shows the name of the person
to whom the freight is directed, the place of its ultimate destina-
tion, and sometimes a specification of what the freight is, but
which does not show the amount of charges upon the freight for
carriage up to that point. It is also usual, upon the same day
with the delivery of the freight and the memorandum bill, for the
delivering road to make out at their freight office a regular way-bill
of the freight, which regular way-bill shows, in addition to every-
thing shown by the memorandum bill, the amount of the charges
of the delivering road upon the freight, which charges include
their charge for carriage over their own line and whatever charges
they have paid or become responsible for for transportation over
other roads over which the freight may have come, and deliver
this way-bill at the freight office of the receiving road.

" According to the custom of doing business between connect-
ing roads, whenever one road receives freight from another con-
necting road, they become responsible to the road from which
they receive the freight for all charges they have for their own
carriage and for back charges, whether paid by them or which
they in their turn have become responsible for; and the last
road, which carries the freight to place of ultimate destination,
retains the freight until they have collected all these charges.

" In some cases the regular way-bill is not delivered on the
same day with the freight, and in such cases the custom of the
Fitchburg railroad company, of which I am, and in July, 1876,
was, the general freight agent, is to receive the freight with the
memorandum bill, and send it forward at once, and afterwards, as
soon as received, sending on the regular way-bill. Such, too, has
been the habit of the Boston & Maine railroad company in doing
business with our road. There are, however, some roads which
refuse to receive freight at all without the regular way-bills show-
ing charges.

" In all cases, upon the receipt of freight, the company receiv-
ing it becomes responsible for all charges for previous transporta-
tion over connecting lines to the company from which they have
received the freight."

It is also admitted that W. J. C. Kenney, now, and in July, 1876, the general freight agent of the defendant company, would testify exactly the same as Mr. Hartwell, both in relation to the general custom of doing business between connecting roads, and as to the particular custom of the Boston & Maine and Fitchburg companies, in cases where regular way-bill showing charges is not delivered on the same day with the freight.

It is also admitted that Payson Tucker, now, and in July, 1876, the superintendent of the Maine Central railroad company, would testify as follows :

" The established rule of the Maine Central railroad company is, not to receive goods from connecting lines to be forwarded unless such goods are accompanied by a regular way-bill, or memorandum, giving name of consignee, destination and charges due. This rule was in full force and effect during the year 1876, and was adopted in accordance with orders from the Superintendent's office."

If asked by plaintiff's counsel, Mr. Tucker would also say that, if perishable goods were offered to his company without the regular way-bill accompanying, he thinks he should direct their being received and forwarded, if thereto particularly requested by the connecting road, and upon being fully protected from all liability resulting therefrom by the road offering the goods; but would also add that such cases did not often occur, and he did not remember any such actual case.

It is also admitted that Robert A. McClutchy, now, and in July, 1876, the freight agent of the defendant company, in Portland, would testify that, as such agent of the defendant company in Portland, the place of connection of the two roads, the regulations of the Maine Central railroad company, testified to by superintendent Tucker, had been communicated to him ; that the business between the two companies was done in accordance therewith ; and that in every case where he, in behalf of the defendant company, had offered freight to the Maine Central company without accompanying way-bill showing charges, the freight had been uniformly refused, and that in several cases he did so offer freight and have it refused.

It is also admitted that Charles M. Chase, of Reading, Mass., would testify that, in July, 1876, he was in the employ of the defendant company, in Boston, as yard clerk in the freight department. His duties as such clerk were to receive memoranda accompanying freight received by defendant company from connecting roads in Boston, to go to the freight office for the way-bills of the freight, and from the memoranda and way-bills to make out new memoranda to accompany the freight over the line of the defendant company. The memoranda made by him were known as conductors' memoranda, and were to be passed in by conductors with the way-bills of freight at the freight office of the company, at the end of their route.

He remembers a car load of mowing machines received from the Fitchburg railroad company, in Boston, directed to D. M. Dunham, Bangor, Maine. He thinks the memorandum received by him with the car was dated July 1, 1876, and was received by him this same day the car was delivered to defendant company, viz: July 3, 1876. He knows the car was forwarded to Portland over defendants' road on the same day it was received; there was a delay in the delivering of the way-bill of this car load of machines, and he distinctly remembers of going during this delay to Mr. Saville, then the freight agent of the Fitchburg company, in Boston ; he had before going at least twice reported the non-delivery of this way-bill at defendant company's freight office, to Charles E. Merritt, that he might write to the Fitchburg officials for it. When he personally went to Mr. Saville for it, Saville told him that the bill had not yet got round. He remembers this transaction from having looked into the car, noticing the character of the freight, and thinking it had better go forward at once. He personally attended to its being attached to that day's train, and spoke to the conductor of the train about it. He also remembers it from the unusual delay in the delivery of the way-bill, and from the matter being investigated soon after, when it was fresh.

The memoranda sent by him with freight contain the name of place on defendants' road from which the freight starts, the place thereon where it is to leave the road, the name of consignee,

place of final destination, number of car, and description of its contents.

It is also admitted that Charles E. Merritt, of Boston, would testify that, in July, 1876, he was employed in the general freight office of the defendant company, in Boston; that, in the course of said employment, in said July, 1876, between the time when a car load of mowing machines directed to D. M. Dunham, Bangor, Maine, was received by defendant company, from Fitchburg company, and the time when the way-bill of said freight was received by defendant company, he wrote two letters to the freight officials of the Fitchburg company, and sent them in the ordinary course of such business by messenger, inquiring about said way-bill, and requesting its delivery; that he has no personal knowledge of the delivery of the car, except as it was reported to him by the man in the yard at the time; that he remembers sending these letters on account of the delivery of the way-bill, and because the matter was brought to his attention upon its investigation not long afterwards, when it was fresh.

It was agreed that all the foregoing testimony, which it was admitted would be given by the various persons aforesaid, should be regarded as if actually given upon the stand, and that it may be used by either party in the case as proof actually taken on the stand, subject only to such legal objection as might be made to its admissibility if actually offered on the stand, such objections to be made by either party at the trial or in the argument of their case, without prejudice on account of such objection not having been earlier made and herein noted.

The case was then withdrawn from the jury and continued on report, with the stipulation that, if the full court shall decide that the defendants had a legal right to detain the car in question until the Fitchburg railroad company had delivered the expense account of back charges, then a nonsuit is to be entered; otherwise, the case to be sent back for the jury to settle the facts, under such rules of law as may be laid down by the law court.

*H. L. Mitchell*, for the plaintiff.

*Wilson & Woodard*, for the defendants, cited *Watts* v. *Bailey*,

49 N. Y. 464. *St. John* v. *Van Santvoord*, 6 Hill, 157. *Farmers & Mechanics Bank* v. *Champlain Trans. Co.*, 23 Vt. 186. *Williams* v. *Gilman*, 3 Maine, 276. 1 Greenl. Ev., §§ 292, 294. 2 Redf. Railw. (5 ed.), § 184. *Judson* v. *Western R. Corp.* 4 Allen, 520, 526. *Briggs* v. *Boston & L. R. R. Co.*, 6 Allen, 246. Story Bail., § 532. *Bowler* v. *E. & N. A. Railway Co.*, 67 Maine, 395. *Stevens* v. *Boston & Worc. R. R. Co.*, 8 Gray, 262, 266.

APPLETON, C. J.   The defendants, on July 1, 1876, received from the Fitchburg railroad company certain goods consigned to the plaintiff at Bangor, with a memorandum stating from whom received and to whom and where to be delivered, but the Fitchburg company neglected or omitted from carelessness to furnish the defendant with the amount of precedent freight earned.

The defendants received the goods, and on the third or fourth of July carried them to Portland, where they remained until July 12, when, having received a bill of all previous freight earned, they delivered the goods to the Maine Central railroad, which corporation took them to their place of destination and delivered them to the consignee.

The plaintiff, in consequence of the delay in transportation, lost the sale of his goods, and brings this action to obtain compensation for such loss.

The acceptance by the defendants of the goods at Portland was complete when the goods by their consent came into their hands. *Pratt* v. *Railway Co.*, 95 U. S. (S. C.) 43.

The defendants receiving the goods and taking them to Portland, in so doing were common carriers and liable as such.

But as the goods were to be delivered at a point beyond their line, and as they knew where and to whom they were to be delivered, they were thus to be regarded as forwarders, and it became their duty to forward the goods without unnecessary delay. *Plantation No. 4.* v. *Hall*, 61 Maine, 517. *Rawson* v. *Holland*, 59 N. Y. 611. *Burroughs* v. *N. & W. R. R. Co.*, 100 Mass. 26.

The defendants manifestly neglected their duty as forwarders.

For so doing they rely upon an established rule of the Maine Central railroad company, which is not " to receive goods from connecting lines to be forwarded unless such goods are accompanied by a regular way-bill or memorandum giving name of consignee, destination and charges due."

But this rule, if proved, cannot avail, because they did in fact receive the goods and carry them part way, and thus receiving them and transporting them they were bound to forward.

While the defendants claim all the rights of common carriers they must discharge all the duties of such carriers. Railroads may make arrangements for mutual accommodation. They may have the merit of convenience, but they have not the force of law. They are not obligatory on the public.

It is claimed that they are to be excused because the antecedent charges for freight had not been delivered and they could not collect the freight earned. But that is no excuse. Because the Fitchburg railroad company neglected to furnish the amount of freight, so that they were unable to state the amount of precedent freight and collect it, is no excuse for not forwarding the goods in their possession.

But they would not be responsible for its collection if the negligence of the Fitchburg railroad company prevented their having the necessary information to enable them to make such collection. They should not suffer for the negligence of others for whose acts they are not responsible. They could forward the goods with their own bill for freight earned by them.

But the defendants having received and carried the goods were bound to deliver them to the next railroad. In *Reynolds* v. *B. & A. R. R. Co.*, 121 Mass. 291, the defendants refused to receive the goods because there was no freight bill and expense voucher. In the present case the defendants did receive and transport over their line, but neglected to forward. They cannot deny that they had the custody of the goods as carriers; that they were responsible as such carriers over their road; that when the goods reached its terminus their liability as carriers had terminated and a new duty as forwarders had arisen, which they neglected to discharge.

But the defendants are not justified in the delay in this case by

the evidence upon which reliance is placed. Hartwell, the general freight agent of the Fitchburg railroad, and Kenney, the general freight agent of the defendant company, agree that in cases where the regular way-bill is not delivered on the same day as the freight, the custom of both railroads " is to receive the freight with the memorandum and send it forward at once, and afterwards, as soon as received, sending on the regular way-bill." Neither witness states that the road receiving the freight with the memorandum is to retain it till the way-bill is received, or that the freight received is subject to the further order of the road delivering it until the way-bill is forwarded. If it were so, the road receiving the freight might be compelled to hold it against the will of the owner until the road delivering the freight should see fit to deliver the way-bill. This would make the subsequent carriage of goods depend upon the action of the railroad delivering, and their carriage might be delayed indefinitely.

What the defendant corporation should have done, and what it did not do, was to deliver the freight with their own charges only, and the memorandum stating the place where and the person to whom the freight was to be forwarded, to the next line of railroad over which the goods were to be transported. If the Fitchburg railroad should not forward their freight bill in a reasonable time, so that the defendants could collect the freight, they would not be responsible for it. The loss would be the result of negligence on the part of the Fitchburg railroad, which that corporation could not and should not impose on these defendants.

But it has been urged that the Maine Central railroad company would not have received the goods without a way-bill giving the charges due. They were not tendered for transportation, therefore it cannot be known that they would not have carried them to their place of destination.

But why should not the Maine Central railroad have taken and carried the goods ? It seems from the testimony of their freight agent they were accustomed to forward freight though the regular way-bill showing charges was not delivered on the same day with the freight.

Again, it was the duty of the Maine Central railroad as common carriers to receive and transport the freight. The defendants had the goods to forward, and it was nothing to the Maine Central railroad that the Fitchburg railroad, or some preceding railroad on the route, had neglected their duty. The Maine Central would not be liable for precedent freight earned, of which they had no notice. Indeed, they might assume that, if no charges were made known to them, it was because none whatever existed. They would have no right to refuse goods tendered for carriage.

Where goods are delivered to a railroad company by a connecting railroad company to be transported to the owners, and the same are received by said company for the purpose, it becomes its duty to send them off immediately; and it cannot justify the detention of the goods on the ground that, by its regulations, goods received from a connecting road are not to be forwarded until the receipt of a bill of back charges, and that no such bill accompanied the goods. *Michaels* v. *N. Y. Cent. R. R. Co.*, 30 N. Y. 564. This case determines the precise question under consideration.

In the case of transporting goods over several railroads constituting a connecting line, neither company is an agent of the owner; each exercises an independent employment as a contractor with the owner and is responsible for its own negligence, and it cannot make the owner responsible for the negligence of a connecting road. *Sherman* v. *Hudson R. R. Co.*, 64 N. Y. 255.

Here the defendants' only excuse is the negligence of another railroad, and that, too, when they had all the information needed for the discharge of their own duty. The convenience of the public must have precedence. It is not just that goods consigned should be lost or diminished in value at the cost of the consignee, thereby to exonerate a railroad company from the consequences of its own negligence, still less to exonerate another railroad from the consequences of its negligence. The defendants should have discharged their known duty, whether the Fitchburg company did theirs or not. They should have tendered the goods received with the memorandum to the Maine Central railroad company for

transportation, and then they would have fulfilled the legal obligation resting upon them. If the Maine Central railroad had refused to receive and transport, it would then remain to be seen by what right they could refuse goods tendered for transportation so long as they claim to be common carriers.

The measure of damages is the difference in the value of the articles (which should have been forwarded) at the time and place when and where they ought to have been delivered and when they were actually delivered. *Ward* v. *N. Y. Cen. R. R. Co.*, 47 N. Y. 329.

<em>Defendants defaulted.</em>

WALTON, BARROWS, VIRGIN and LIBBEY, JJ., concurred.