MARY L. PECK, PLAINTIFF, v. WILLIAM VANDERMARK, AS EXECUTOR, ETC., OF SEALEY PECK, DECEASED, AND OTHERS, DEFENDANTS.

*An agreement made in consideration of marriage is valid, if contained in letters written by the party to be charged — right of the promisee to sue after the death of the promisor for damages for a breach of the agreement.*

In the fall of 1879 the plaintiff, a widow, who was about forty-five years old and was then drawing a pension, received a proposal of marriage from the defendant's testator, who was a few years older than she was. Thereafter a correspondence took place between them in which they discussed financial matters and what would be allowed to her in case she should marry him. In his letters he stated that he was worth about $10,000; that in case she married him he would bequeath to her the use and profits of his entire property during her life, and that she should dispose of one-half of it as she should see fit in case she survived him. Relying upon this agreement she married him March 9, 1880, and lived with him until he died June 6, 1881. He left a will dated April 30, 1881, by which he gave to the plaintiff a legacy of $200, and the residue of his estate to a sister and nephew. The plaintiff having presented a claim against the estate to the executors, which was rejected, brought this action against the executors, and the devisees and legatees, and sought to recover a judgment against the executors for the damages she had sustained by the testator's breach of his agreement.

*Held*, that the written promise contained in the letters was sufficient to take the case out of the statute of frauds.

That the plaintiff was entitled to recover.

MOTION for a new trial on exceptions, ordered to be heard in the first instance at the General Term after a nonsuit directed at the Ontario circuit.

*Manning & Kindig*, for the plaintiff.

*W. H. Adams*, for defendants Vandermark and Peck.

*McMaster & Parkhurst*, for defendant Trenchard.

HARDIN, J.:

Section 2 of the Revised Statutes (2 Edm. ed., 140) provides that every agreement shall be void "made upon consideration of marriage, "unless *such agreement* or some note or memorandum thereof expressing the consideration, be in writing, and subscribed

by the party to be charged·therewith." Plaintiff, being a widow, in the fall of 1879 visited in the county of Ontario, and received the attentions of the testator to some extent, and from him a proposal of marriage. She gave no decisive answer while she was away from home on a visit, but returned to her home in Chautauqua county, and a correspondence took place between the parties in respect to their inter-marriage. As she was a widow some 45 years of age, and he a few years older, they discussed and considered financial matters and what should be allowed to her in case she consented to marry him out of his property. He had real estate in Ontario and Seneca counties worth about $5,000 and personal property worth about $2,000. He represented in his letters to her that his property at a fair valuation was " worth about $10,000" in his letter to her of October 7, 1879, stated that he would bequeath to her the use and profits of his entire property during her lifetime and half of it to be hers, " to dispose of " as she " see fit " in case she survived him. After several letters passed between them, they apparently came to an agreement to marry, and she relying upon his promise entered into the marriage relation with him on the 9th day of March, 1880, and she lived with him until the 6th day of June, 1881, when the testator died by his own hand.

Testator left a will bearing date April 30, 1881, wherein he left a legacy of $200 only to plaintiff, and bequeathed and devised the residue of his estate to the defendants, Trenchard a sister, and Peck a nephew of the deceased.

The will was duly admitted to probate September 19, 1881, and the defendant Van Dermark qualified as the executor thereof. After advertisement for claims the plaintiff presented a claim to the executor for $6,000, and the same was rejected by the executor, who also refused to consent to a reference under the statute.

Trenchard and Peck were made parties " in order that they may have an opportunity to protect whatever right they may have in the premises and that they may be bound by the judgment herein, and plaintiff claims no costs against them " but demands judgment for $6,147 with interest from March 9, 1880, against Van Dermark as executor. Plaintiff gave in evidence several letters which passed from her to the deceased, and several letters of his to her. We think the letters competent to establish the agreement set out

in the complaint and to establish the promise of the deceased in consideration of the marriage, and that those subscribed by the deceased were sufficient to answer the requirements of the statute of frauds to which we have alluded.

In Schouler's Domestic Relations (p. 266) it is said, viz. : " Letters also, if they sufficiently furnish the terms of the agreement, have been held good marriage contracts." "And it is now clearly settled that a letter which sustains the terms of an agreement, or refers to another paper which specifies the terms, is sufficient to take the contract out of the statute of frauds."

Of course, in this case, it was proper to read his letters, in conjunction with hers, to which he referred, as well as those of his subsequent to his proposal of terms and promises, in order to ascertain the exact terms of the contract entered into by the parties in regard to the property. (*Myers* v. *Smith*, 48 Barb., 614; *Rogers* v. *Smith*, 47 N. Y., 324.)

Evidently the consideration for the testator's promise was the consent of the plaintiff to let go her annuity derived from the United States government, by way of a pension given for the loss of her former husband, the agreement to marry and the marriage of herself to the testator. Marriage is a good consideration for a promise. Chancellor KENT says " marriage is held to be a high consideration in law." (4 Kent's Com., 542; see, also, *Sterry* v. *Arden*, 1 Johns. Ch., 260; *Campion* v. *Cotten*, 17 Vesey, 264 and note; Schouler's Domestic Relations, 268.) In *Curry* v. *Curry* (10 Hun, 370), TALCOTT, J., says : " It is true that marriage itself is a valuable and sufficient consideration to sustain many contracts." Marriage did not extinguish or destroy the contract made in contemplation thereof. It is expressly enacted in the statute of 1848, chapter 200, that all contracts made between persons in contemplation of marriage shall remain in full force after such marriage takes place. Having made the promise before marriage, and the plaintiff having let go her pension and performed her part of the promise by entering into marriage with the deceased, he was obligated to observe his promise, and his failure to assure to her his property by will or otherwise according to his agreement was a breach of his contract. The evidence of his breach of it was perfect when he died, without having made over or secured to the plaintiff his property as he

agreed, or having made a will that should carry out the tenor and spirit of his undertaking with the plaintiff.

Upon the evidence before the court the defendants doubtless were entitled to have the jury find as a matter of fact just what the terms of the agreement were. We think the letters of the deceased clearly reflect his intentions, and furnish the basis for ascertaining the exact terms of the agreement of the deceased. The essence of the agreement relied upon was in writing and made so definite by the letters of the deceased that its terms may be ascertained. The case of *Wright* v. *Weeks* (25 N. Y., 153) is unlike this as there the writing relied upon to take the contract out of the statute of frauds did not contain the terms of the agreement. Here the parties are named, the consideration made known, and the subject matter, namely, deceased's property, as well as the promise in respect thereto are stated, and we think the statute is satisfied. (*Wain* v. *Warlters*, 5 East, 10.)

*Wright* v. *Weeks* (*supra*, opinion of ALLEN, J., 161); *Dickinson* v. *Rowson* (MS. opinion of TALCOTT, J.), cited to us on the argument differs from the case in hand, there was no doubt about the acceptance of the terms offered. Here the letters quite clearly show that the minds of the parties met as to the consideration for the promise of the deceased, and that the marriage was solemnized after the promise given to induce it. One of the deceased's letters was specific, wherein he says to the plaintiff " you shall have the use of my entire property your lifetime, and one-half to do with as you see fit, in case you survive me. These conditions I will secure to you by will, and I promise you they will be faithfully carried out." He understood she would forfeit her pension by marriage and she referred to that in one of her letters to him. Both parties seemed to have a full comprehension of the matters which were considered in reaching the conclusion to inter-marry. Indeed they gave more attention to business aspects of the new relations to be assumed than to any sentiments of affection or love.

They were mature parties, and consummated their contract and marriage in pursuance of it, in the light of intellectual and business modes, in disregard of more tender and sentimental emotions. Why should not the contract be fulfilled which they deliberately entered into? Anti-nuptial settlements and contracts have frequently been

enforced in equity. Frequently they have created trusts which in their enforcement come appropriately under the equity jurisdiction of the court. (*Neves* v. *Scott*, 9 How. [U. S.], 197; 2 Story Eq., § 986.) Before the statute of 1849, declaring such contracts valid after marriage, courts of equity took cognizance of such agreements and enforced them. (*Miller* v. *Goodwin*, 8 Gray, 542; *Dygert* v. *Remerschnider*, 32 N. Y., 645.) However, in the case in hand the plaintiff has sought to maintain her right to recover damages in an action of law. The complaint is framed for a recovery at law, of damages alleged to have been sustained by reason of the breach of the agreement made by the deceased.

No dilatory plea or defense predicated upon the want of jurisdiction in a court of law to give adequate damages is found in the answer of either of the defendants.

By omitting to demur, the devisees and legatees have waived any objection to their being joined with the executor. It is not needful to hold in this case that the plaintiff would not in equity be entitled to relief. As distinction between law and equity has been abolished by the Code, and a party who comes to this court with a case containing facts showing a right to a recovery either at law or in equity, is entitled to such relief as exact justice requires. We see no occasion to stop to consider whether this action could not be upheld according to the principles of equity jurisdiction.

It would, of course, be difficult to enforce a specific performance of the agreement to make a will, and thus secure to the plaintiff the one-half of the deceased property, and the use of the other one-half thereof to the plaintiff during her natural life. But it is not difficult to see that in a court of equity the action might be retained and damages given. Plaintiff was entitled to relief without stopping to speculate upon the name to be given to the action. (*Wright* v. *Wright*, 54 N. Y., 443.)

Assuming, as we properly may, that the parties have elected to treat this as an action at law, the important question remaining to be considered relates to the damages to be given for a breach of the testator's agreement. For we are of the opinion that when he died, without securing to the plaintiff by conveyance or will the property he had promised, a breach of the agreement had occurred.

The learned circuit judge who granted the nonsuit seemed to put

it upon the ground that this action was premature, because the executor had not completed a settlement of the estate, and that the debts had not been ascertained. In that view of the case we think there was an error, in holding that plaintiff's claim is one "which in the nature of the case cannot be estimated until the estate is settled and the debts are shown to have been paid; and, therefore, the action is prematurely brought." The ruling was excepted to, and the exception presents an error. The value of the estate was shown; claims or debts to the extent of some $623 had been presented, and allowed to the extent of $600, and but little remained to be done to ascertain the extent of any other indebtedness. We think that might have been, if it was not already, made certain by proofs. Besides it was within the power of the court to allow a recovery predicated upon the value of one-half of the property left by the deceased, and the value of one-half of the use of the other half for the lifetime of the plaintiff, and then to have ordered a reference to ascertain the extent of the debts of the testator, and the expenses of settling his estate. Or the judgment establishing the right of recovery could have reserved the question of the amount of recovery, to be settled and ascertained after the final decree of the surrogate in the premises. The judgment sought here would thus be made to bind the assets only. (Code of Civil Pro., 1824, §§ 1371, 1825, 1826.)

The value of property to be given and secured to the plaintiff should be made the measure of the damages for the breach of the agreement. The parties in making the agreement had reference to the property and to its value. The testator represented to the plaintiff that it was worth about $10,000. The terms of the agreement referred to the property. It was made by the parties, the compensation to be given or secured to the plaintiff, as the compensation which he would give to her, if she would give up her pension and join him in wedlock. She had a right to rely upon that compensation being given to her which he had referred to in the contract made with her. We think this case falls within the principles laid down in the opinion of WELLS, J., in *Lisk* v. *Sherman* (25 Barb., 438). Plaintiff's right to recover rests upon the contract, and that stipulated in terms she should have one-half of the testator's property and the use of the other half during her life, and to make good

that promise of pecuniary benefit, we think she should be allowed to recover exactly what she lost by the breach of the agreement broken by the testator. (*Burlingame* v. *Burlingame*, 7 Cowen, 92; *Thomas* v. *Dickinson*, 2 Kern., 372.)

We are of the opinion that the plaintiff ought not to have been nonsuited at the circuit, and we therefore order a new trial.

BARKER, J., concurred; SMITH, P. J., not participating in the decision.

Nonsuit set aside, new trial ordered, costs to abide the event.