GRINNELL-COLLINS COMPANY v. ILLINOIS CENTRAL RAILROAD COMPANY.[1]

January 21, 1910.

Nos. 16,344—(41).

**Action by Commission Merchant — Consignment in Transit.**

Where property is consigned to a commission merchant for sale without any previous contract, or any advances made to the shipper, the consignee acquires no general or special ownership in the property before its delivery to him, and cannot maintain an action to recover for damages to the property in transit.

**Rule not Changed by Statute.**

Chapter 466, Laws 1907, does not change the rule that an action may be prosecuted only by a real party in interest.

Action against the Chicago, Milwaukee & St. Paul Railway Company and the Illinois Central Railroad Company in the district court for Hennepin county to recover $637.08 for negligence in transporting a shipment of strawberries from Independence, Louisiana, to

[1]Reported in 124 N. W. 377.

Minneapolis, Minnesota. Before the plaintiff's motion for a new trial had been decided, plaintiff dismissed the action as to the Chicago, Milwaukee & St. Paul Railway Company. In its separate answer the other defendant denied the negligence, and alleged the berries were shipped under a bill of lading providing that defendant was to be liable only for such damages as arose upon its own line of railway; that there was a misjoinder of causes of action in that the two defendants named were united in the same cause of action, there being no contract for a joint carriage and the bill of lading providing for separate liability. Before serving this answer this defendant's demurrer on the ground of misjoinder of action and that Laws 1907, c. 466, was unconstitutional because an attempt to regulate interstate commerce, was overruled. The case was tried before John Day Smith, J., who denied defendant's motion to direct a verdict in its favor, and before a jury which returned a verdict in favor of both defendants. Plaintiff's motion for a new trial was granted as to Illinois Central Railroad Company. From that order, defendant appealed. Reversed and judgment granted for appellant.

*Richard & Coe,* for appellant.

*Walter Holsinger,* for respondent.

O'BRIEN, J.

A carload of strawberries was consigned at Independence, Louisiana, to the plaintiff in Minneapolis for the purpose of sale and distribution, on commission, for the consignor's account. Alleging that the fruit was delivered in good condition to the Illinois Central Railroad Company, the initial carrier, April 9, 1907, and because of defendant's negligence arrived in a decayed, bruised and unmarketable condition at Minneapolis April 15, 1907, the plaintiff commenced this action against both of the carriers handling the shipment.

After its arrival the fruit was taken by different commission firms in Minneapolis, each of which disposed of the portion taken by it, and before the commencement of this action accounted directly to the shipper. Mr. Metz, the secretary of the plaintiff, testified:

"Q. Supposing there was a loss on the shipment of these berries,

was that loss to be borne by the men at the other end of the line, who shipped them? A. We would only lose the difference of commission, whatever the commission would be in the increased sale; that is all. Q. In other words, Mr. Metz, the plaintiff in this case, Grinnell-Collins Company, was simply the broker to whom these berries were shipped? A. We are the agents of these people. Q. You charge a commission? A. Yes, sir. Q. For your services in the sale of the berries? A. A commission; yes. Q. Based upon the amount received for the berries? A. Yes, sir. Q. You are termed commission merchants? A. Yes, sir. Q. Selling on commission? A. Yes, sir."

When recalled he said: "Thirty-eight cases of quarts and 28½ or 25½ cases of pints were put in this car for our firm, the plaintiff in this suit. We sold those for $152.48, and that is all the berries our firm, the plaintiff, received from this car. We remitted to the shippers the proceeds of those berries, less our commission and freight charges. Q. So that there is still nothing due your firm, the plaintiff, from the shippers on account of them? A. Only the increased commission that we would get by having a better sale. Q. These berries were consigned to your firm on a commission basis? A. Yes, sir. Q. Based upon proceeds? A. Yes, sir. Q. You have stated the amount which your firm received? A. Yes, sir. Q. You took out your commission and the freight charges, and remitted the balance to the shippers at the other end of the line? A. Yes, sir. Q. You make no claim on account of this freight bill? A. No, sir; whatever that was has all been paid."

Mr. Callender, of the firm of Callender-Vanderhoof Company, testified to the receipt by his firm of some of the fruit, saying that part of the berries in the car were received and sold by his firm, an account of which was kept and accounted for to the shipper at the other end of the line. Mr. Gamble, of the firm of Gamble Robinson Commission Company, testified to the receipt of some of the fruit and the report to the shippers after the sale. After this evidence was received a motion to dismiss was denied. After all the evidence was in, the defendants requested an instruction in their favor, which was also denied. The jury returned a verdict in favor of both. defend-

ants, and a new trial was granted for errors of law as to the defendant Illinois Central Railroad Company; the action having been dismissed as to the Chicago, Milwaukee & St. Paul Railway Company.

A consideration of the claim that the plaintiff had no interest or ownership, general or special, in the property damaged, has led us to the conclusion that the position of the appellant in that respect must be sustained. Section 4053, R. L. 1905, requires that, except when otherwise expressly provided by law, every action shall be prosecuted in the name of the real party in interest. Obviously the actual owner of property is a proper plaintiff; but another, although not the owner, may have rights in or may bear a relation to the property which will authorize an action by him for its possession, its value, or for damages done to it. The statute was not intended to obstruct the administration of law, but to bring before the court a party rightfully interested in the litigation, so that only real controversies be presented and judgments, when entered, be binding and conclusive. Therefore, where the plaintiff has possession, as agent, factor or bailee, he has a special ownership in the property, and if it is taken from him, or damaged by the wrongful act of another, he may maintain an action for the loss. Brown v. Shaw, 51 Minn. 266, 53 N. W. 633, and cases cited.

The fruit claimed to have been damaged in transit was consigned to plaintiff for sale on commission. The evidence does not indicate any special contract with reference to it. Each of the commission merchants in Minneapolis who handled any part of the shipment accounted directly to the shipper. No advances were made by the plaintiff to the owner, except the payment of the freight charges after the fruit had arrived in Minneapolis. Before the commencement of this suit the plaintiff had fully accounted to the shipper. When asked as to anything still due the plaintiff, Mr. Metz said, "Only the increased commission that we would get by having a better sale." This was not an action to recover lost profits by plaintiff in its own right, but was to recover, as owner, damages for injury to personal property, and must be determined upon that theory.

The consignee of property delivered to a common carrier for shipment is presumed to be the owner, but the presumption may be over-

come by evidence. Dyer v. Great Northern Ry. Co., 51 Minn. 345, 53 N. W. 714, 38 Am. St. 506; Benjamin v. Levy, 39 Minn. 11, 38 N. W. 702. It is insisted that the consignee has always such special ownership in the property that he may sue for damage to it. Support for this contention is found in the language used in Boston v. Warrior, 76 Me. 251, where it was said that an agent to whom goods were consigned to be sold upon a specified commission might maintain an action against the carrier to recover, not only his own damages, but such as accrued to the general owners. In that case the general owner and the plaintiff had a definite contract, under which the plaintiff agreed to pay the freight and sell the goods for a specified commission. Before the final determination all the parties interested were before the court, but the particular question here involved does not appear to have been raised when the action was first before the court as between the agent and the carrier. Dunham v. Boston, 70 Me. 164, 35 Am. Rep. 314. In Missouri Pacific v. Peru-VanZant, 73 Kan. 295, 85 Pac. 408, 87 Pac. 80, 6 L. R. A. (N. S.) 1058, 117 Am. St. 468, the plaintiff had a definite contract with the manufacturer of threshing machines as to price and commission, and, having secured contracts for the sale of two machines ordered them, they were consigned to the plaintiff, but did not arrive in due time, and it was held the agent could sue upon behalf of itself and its principal.

Other cases cited by counsel in support of his contention are still more easily distinguished, as where advances had been made by the consignee, or where he was the owner of some items of property included in one consignment, or where apparently there had been a direct sale to the consignee. In all such cases the consignee undoubtedly had a special ownership in the property. Walter v. Alabama, 142 Ala. 474, 39 South. 87; Southern v. Armstead, 50 Ala. 350; Mobile v. Williams, 54 Ala. 168; Cudahy v. Dorsey, 26 Tex. Civ. App. 484, 63 S. W. 548; Ober v. Indianapolis, 13 Mo. App. 81. See also Capchart v. Furman, 103 Ala. 671, 16 South. 627, 49 Am. St. 60; Louisville v. Allgood, 113 Ala. 163, 20 South. 986. These last are in accordance with the decisions of this court already referred to, and the following as well: Chamberlain v. West, 37 Minn. 54, 33 N. W. 114; Laing v. Nelson, 41 Minn. 521, 43 N. W. 476; Parks

v. Fogleman, 97 Minn. 157, 105 N. W. 560, 4 L. R. A. (N. S.) 363, 114 Am. St. 703.

The text-book writers agree that ordinarily the consignee may maintain an action against the carrier, but that, where the title and right of possession remain in the consignor, he may sue, and it is easily understood that in many instances either may bring the action. Each case must depend upon the particular facts shown to exist. Elliott, R. R. (2d Ed.) § 1692; 3 Hutchinson, Carriers, §§ 1304–1320; Thompson, Com. Law of Negligence, §§ 7420–7424. The final conclusion in Hutchinson, Carriers, § 1320, is that the consignee, who has "no property in the goods, either general or special, and incurred no risk in their transportation, cannot maintain an action for their loss or damage." This court has held that the consignor may, when he is the owner of the property, sue the carrier for its loss, but has never, we believe, been called upon to pass upon a case precisely like the one at bar. Jarrett v. Great Northern Ry. Co., 74 Minn. 477, 77 N. W. 304. We think the following are also instructive: Railroad v. Deakins, 107 Tenn. 522, 64 S. W. 477; Moran v. Portland, 35 Me. 55; Hooper v. Chicago, 27 Wis. 81, 9 Am. Rep. 439; W. & A. R. Co. v. Kelly, 1 Head. (Tenn.) 158; Price v. Powell, 3 N. Y. 322; U. S. v. Council, 84 Ill. App. 491.

We agree with the conclusion arrived at by Mr. Hutchinson above quoted. Tested by that statement, the plaintiff cannot maintain this action. The evidence is silent as to how the fruit came to be consigned to plaintiff, unless, as a commission merchant, it stood ready to receive and sell to the best advantage goods consigned to it by owners and dealers generally. It certainly, so far as the evidence discloses, incurred no risk in the transportation of the property, and the evidence does not show that it acquired any special ownership in it before the damages were sustained.

It is further claimed that, even if the plaintiff could not have maintained this action prior to the enactment of chapter 466, p. 715, Laws 1907, it now may do so under the provisions of that law. This seems to have been the reason given by the learned trial judge for refusing defendants' motion to dismiss. In denying the motion he said: "I desire to say that the court regards this as a pretty doubt-

ful proposition. It is not believed that it was the intent of the legislature in this act to provide that a person having no interest whatsoever in property could bring a suit for damages to that property. * * *"

The first section of chapter 466 reads: "That whenever any personal property shall be transported by two or more connecting common carriers into or through this state, and shall become injured or damaged during transportation, the consignor, consignee or owner, .thereof, or his assignee, in an action to recover damages for such injury, may join as parties defendant, one or more of such connecting common carriers with the last or delivering common carrier."

It is apparent that it was not intended to change the rule that an action must be prosecuted by the real party in interest. Its effect is that when a party so qualified, be he consignor, consignee, owner or assignee, brings the action, he may join all the carriers handling the shipment. Inasmuch, therefore, as the statute has no bearing upon the right of the plaintiff to maintain this action against any carrier, it is not necessary to determine the questions raised by the defendant with reference to it.

The order granting a new trial is reversed, and judgment directed in favor of the defendant appellant.