JAMES E. McGRATH v. NORTHERN PACIFIC RAILWAY COMPANY.[1]

April 25, 1913.

Nos. 18,142—(31).

**Action against carrier for loss of goods.**

1. Where property is injured or lost while in the hands of a common car-

[1] Reported in 141 N. W. 164.

Note.—On the question of the right of a consignee who refuses to accept goods to maintain action for damages against carrier, see note in 30 L.R.A.(N.S.) 1071.

rier, the shipper may sue the carrier upon the latter's common-law liability, without regard to the existence of any special contract of shipment that may have been entered into limiting the carrier's liability, thus leaving it to the defendant to plead such contract by way of defense.

#### Same — contract limiting liability — burden of proof.

2. Where a shipper sues a common carrier upon its common-law liability for injury to or loss of the property, and the defendant pleads and proves a special contract limiting its liability to losses occurring through its negligence, the burden is upon the defendant to prove that the loss was not caused by its negligence, and not upon the plaintiff to prove that it was so caused.

#### Contract unreasonable.

3. The circumstances surrounding the execution of a contract limiting a common carrier's liability for the loss of stock to a certain sum per head held such that it could not be held to be just, fair, and reasonable, within the rule announced in Ostroot v. Northern Pacific Ry. Co. 111 Minn. 504, 508; and hence the court did not err in excluding it from the consideration of the jury in an action wherein the shipper sought a recovery upon the carrier's common-law liability.

#### Charge to jury.

4. Instructions and refusal to instruct upon the issue of contributory negligence of the shipper's agent considered, and held to furnish no ground for reversal.

Action in the district court for Washington county to recover $3,820 for property destroyed by fire while in the possession of defendant as a common carrier. The case was tried before Stolberg, J., who denied defendant's motion to direct a verdict in its favor and a jury which returned a verdict for $3,205.12. From an order denying defendant's motion for a new trial, it appealed. Affirmed.

C. W. Bunn and D. F. Lyons, for appellant.

J. N. Searles, for respondent.

PHILIP E. BROWN, J.

Action to recover $3,820 for the loss by fire of a carload of horses numbering 16 and 8 sets of harnesses. The case was tried to a jury, who returned a verdict for the plaintiff for $3,205.12. The defendant appealed from an order denying a new trial.

The case comes here upon a bill of exceptions, which, according to the trial court's certificate thereto, contains a complete record of all

proceedings had, including all the evidence offered on the trial, "except that most of the evidence relative to the cause of the fire which destroyed the carload of horses and responsibility therefor has been omitted." An understanding of the questions to be determined requires a statement of the issues made by the pleadings, with the evidence adduced in the course of the trial.

The complaint is based squarely upon a breach of the defendant's common-law duty as a common carrier in the transportation of the property mentioned, and alleges in substance the plaintiff's possession of the horses and harnesses near Willow River, Minnesota, under a contract of hire with their owner, coupled with a condition that the plaintiff was to return them to him at Stillwater, Minnesota; that for the purpose of performing this obligation the plaintiff, in March, 1912, delivered to the defendant, and the defendant as a common carrier received, such property for the purpose of transporting it from Willow River station to the plaintiff at Stillwater for a reasonable compensation; that the defendant failed to transport any of the property, but, on the contrary, so conducted itself in regard thereto that it was destroyed by fire while in the defendant's possession at the station mentioned. No negligence is charged.

The answer admits that the defendant received from one Mattson the carload of horses mentioned, and that the same were consigned to the plaintiff at Stillwater; alleges that Mattson and the defendant entered into a contract for the transportation of the horses, a copy of the same being made a part of the answer; denies the receipt of the harnesses; admits the destruction of the horses by fire; denies that the fire was caused by any act or omission on the defendant's part, or that it was due to its negligence; alleges that the destruction of the horses was caused solely by the negligence of the shipper, consignee, and their servants and agents; and denies all other allegations of the complaint. The reply put in issue all the allegations of the answer. The relevant portions of the contract referred to will be stated later in this opinion.

The plaintiff, during the trial, withdrew his claim for the destruction of the harnesses. To establish the allegations of his complaint he offered evidence conclusively establishing that prior to the shipment

in question he was conducting extensive logging operations in the vicinity of Willow River, using therein a great many horses; that the horses destroyed, and also certain others in the plaintiff's possession, belonged to one Farmer at Stillwater, from whom the plaintiff had previously hired them, pursuant to a contract whereby he had undertaken to return them; that to that end one of the plaintiff's agents, named McGillan, ordered by 'phone from the defendant's agent at Willow River several cars, one for Monday and two for Tuesday following the order; that Monday one carload of horses was delivered to the defendant, and that on the next day the horses which were destroyed were sent in charge of the said Mattson, the plaintiff's employee, from the plaintiff's camp to the station for shipment. According to McGillan's testimony, Mattson's instructions were to take the horses "out to Willow River, load them, and go down to Stillwater with them." Mattson testified that his instructions were "to take them horses out to Willow River, and load them and take them to Stillwater, and deliver them to H. C. Farmer."

It also appeared that on the journey to the station one Patient, an ex-employee of the plaintiff, joined Mattson and was permitted by him to ride one of the horses to the town; that when Mattson reached the station he was advised by the defendant's agent that a car would be spotted for him, and that in the afternoon of the same day he loaded the horses, finishing about 9 p. m., after which he went to the village for lunch; and that about half an hour or more thereafter the car was discovered to be on fire, and the horses destroyed. Testimony was offered that the value of the horses was $225 each.

On cross-examination Mattson testified that on the afternoon of the same day he signed the contract, a copy of which was attached to the answer; the original being offered in evidence by the defendant and received. There was also evidence tending to show that Patient was at the car while the loading was being done; that he purchased a lantern on the night of the fire, and was then intoxicated; that he had the lighted lantern that night at about 8 or 9 o'clock; and that some one was burned to death in the car. Save as above stated, the record contains no evidence as to the origin of the fire.

Other material evidence was received, bearing upon questions other

than the first two to be discussed, and will be stated later in its proper connection. It is conceded that the plaintiff, although not the owner of the horses, had the right, as consignee thereof, to sue to recover damages for their injury and destruction, and this unquestionably is the law. Grinnell-Collins Co. v. Illinois Central R. Co. 109 Minn. 513, 124 N. W. 377, 26 L.R.A.(N.S.) 437.

1. The effect of the court's charge was to permit a recovery without proof of negligence, and the defendant, predicating its claims upon a stipulation contained in the special contract mentioned, contends that such was reversible error, for the reason that under the contract the plaintiff was bound to prove the defendant's negligence; the provision thereof relied upon in this connection being that "the company shall not be liable for delay in transit or for the loss or death of or injuries to the stock, unless the same is caused by the negligence of the company, its agents or employees." For the purpose of the discussion of this point, and also for all other matters considered in this opinion, we will assume, notwithstanding the plaintiff's contention to the contrary, that the answer was sufficient. We will also assume, for the purposes of the present inquiry, that there was no oral contract for the transportation of the horses, and that the written one was valid and binding upon the plaintiff in accordance with its terms.

At common law the defendant was an insurer of the property, and in the absence of an express contract, leaving out of account the question of contributory negligence, the plaintiff was entitled as a matter of law to recover the value of the property destroyed without proving negligence on the part of the defendant; and even if there was an express contract, which we now assume as above stated, no duty devolved upon the plaintiff to plead it, it being his right and privilege to do just what he did—that is, to base his action upon the defendant's common-law liability and leave it to the defendant to allege any special contract attempting to limit its liability. It is true that the cases are in conflict upon this proposition; but the later and in our opinion the better considered cases, decided under the more liberal modern practice, sustain the view announced. In 6 Cyc. 514, it is stated that "the better rule is that the special contract containing conditions in favor of the carrier is properly a defensive weapon, to be used by the

carrier when sued, and that the shipper may disregard it, and sue for breach of common-law duty." This seems to be the rule in the Federal courts. See Southern Pac. Co. v. Arnett, 111 Fed. 849, 50 C. C. A. 17, approved in Empire State Cattle Co. v. Atchison, T. & S. F. Ry. Co. (C. C.) 129 Fed. 480. The same rule has also been laid down in Bartelt v. Oregon, 57 Wash. 16, 106 Pac. 487, 135 Am. St. 959, decided in 1910, and also in Nelson v. Great Northern, 28 Mont. 297, 314, 72 Pac. 642, where it is said:

"We are aware that the decisions on this question are somewhat at variance, but believe the better rule to be that the existence of a special contract for the shipment of live stock, with stipulations therein exempting the carrier from certain liabilities, is no obstacle to the maintenance of an action in tort, based upon the violations of the carrier's common-law liabilities, and that the plaintiff has an election to bring his action on the contract or in tort for damages arising from a violation of the carrier's duties."

To the same effect, see Southern v. Webb, 143 Ala. 304, 39 South. 262, 111 Am. St. 45, 5 Ann. Cas. 97. This conclusion is in logical accord with the proposition stated in the next subdivision of this opinion, and indeed this court has already practically aligned itself with those adhering to the rule as above stated. See Minneapolis, St. P. & S. S. M. Ry. Co. v. Home Ins. Co. 64 Minn. 61, 66, 66 N. W. 132.

2. The question, then, on this branch of the case, resolves itself into one of burden of proof, and may thus be stated: Did the existence of the special contract limiting the defendant's liability to losses occurring through its negligence cast upon the plaintiff the burden of proving that the loss was so caused, or was the burden upon the defendant to negative the same? We do not consider this an open question. "If the goods were shipped under a special contract exempting the carrier from its common-law liability," says Mr. Dunnell, in section 1360 of his Minnesota Digest, "the burden is still on the carrier to prove, not only that the loss or damage was within the terms of the exemption, but also that there was no negligence on its part." This proposition is supported by the cases cited thereto, of which see especially Minneapolis, St. P. & S. S. M. Ry. Co. v. Home Ins. Co. supra;

and there are numerous authorities from other states to the same effect, of which see St. Louis v. Pape, 100 Ark. 269, 140 S. W. 265, 269.

It may be contended that the introduction of the special contract in evidence before the plaintiff had rested changed the rule, or rather rendered it inapplicable. No such result followed, however, as this was done by the defendant, and the plaintiff, during the entire trial, based his claim to a recovery solely upon the common-law liability. This distinction is clearly pointed out in Johnson v. West Jersey, 78 N. J. L. 529, 74 Atl. 496, 138 Am. St. 625, 20 Ann. Cas. 228.

The only evidence disclosed by the record as to the origin of the fire was that above recited concerning the man Patient and his conduct, and this we think was manifestly insufficient to require the court to submit to the jury the question of whether the defendant had sustained the burden upon it to establish the absence of negligence on its part. Furthermore, the evidence in question seems to have been offered upon the issue of contributory negligence, which was submitted to the jury, and of which we will treat in its place. But if it may be claimed that the conclusions above stated are erroneous, the same result must nevertheless follow, for the settled case shows that most of the evidence relative to the cause of the fire and responsibility therefor is not contained therein. Error is never presumed, and what this evidence was we know not.

We hold therefore, that the verdict cannot be disturbed on the ground that the instructions allowed a recovery without proof of negligence. A new trial should never be granted in a civil action for errors in instructions, however egregious they may be, where the verdict was the only one warranted by the law applicable to the case. 2 Dunnell, Minn. Dig. § 7170.

3. The special contract contained a provision to the effect that the shipper declared that the value of the horses did not exceed $100 each, the shipper agreeing to pay for the carriage at the published rate applicable to shipments of live stock valued at not more than the sum stated. The defendant insists that this was a valid limitation of its liability as to amount, and that in no event could the plaintiff recover a greater sum.

For the purposes of discussion we will assume that Mattson had authority to bind the plaintiff by a contract of limited liability, to the same extent as if the plaintiff himself had executed it. It must also be conceded on this branch of the case that the necessary preliminary steps to establish the tariff specified in the contract, and also others,. had been taken. Unless, therefore, it conclusively appeared from the evidence that this contract was invalid by reason of the circumstances. under which it was entered into, then the verdict cannot stand, and there must be a new trial; for the instructions in effect took the special contract out of the case, and left only the right to recover at common law. These circumstances are practically undisputed, and we will state them as favorably to the defendant as the testimony will warrant:

Previously to the execution of the contract there was no conversation between Mattson and the defendant's agent concerning the kind or value of the horses to be shipped; nor was there any talk about. freight rates, tariffs, or charges to be made for the transportation, and nothing was said about any other paper or contract. According to the testimony of the agent, his only thought seems to have been to secure the execution of a contract covering the shipment, and there was nothing even in the nature of a meeting of minds upon the particular contract here involved. The agent testified that he requested Mattson to come into the station and fix out *the* contract—not *a* contract— and that when he came in he (the agent) prepared the contract and said, "You know what this is for; you got to get release to ride with them;" and that Mattson replied, "I know all about it; I signed good many of them;" and on cross-examination the agent admitted having said to Mattson that he would have "to release the stock in order to go with the stock." It is clear, also, that Mattson's purpose in executing the contract was to secure the right to accompany the stock. There was, in short, a total absence of the usual conversation necessarily had between parties preliminary to the execution of a. written contract, and of consensus concerning the subject-matter.

It is true that a meeting of minds is usually presumed from the execution of a written instrument, but here all the surrounding facts and circumstances speak to the contrary, and the question

is whether the contract in question can be sustained under the principles applicable to contracts of its character and kind. Upon the state of facts recited, the court, had it submitted the question of the validity of this contract to the jury, would have been obliged to state the law applicable thereto substantially as laid down by Chief Justice Start in Ostroot v. Northern Pacific Ry. Co. 111 Minn. 504, 508, 127 N. W. 177, 178, and as follows:

"The alleged contract is an attempt by a common carrier to limit its common-law liability for the loss of the goods. Such contracts are exceptions to the common-law rule of liability, and they should be carefully scrutinized by the courts, and only enforced when it is made to appear that they are just and reasonable, and were fairly entered into by the shipper, with full freedom of choice. It is the settled doctrine of this court that contracts so made, if fair, just, and reasonable, will be upheld as a proper mode of securing a due proportion between the amount for which the carrier may be responsible and the freight charges he receives, and of protecting himself from extravagant valuation in case of loss; but a mere arbitrary valuation, simply for the purpose of limiting the carrier's liability, will not be sustained as just and reasonable within the rule."

If the circumstances surrounding the execution of the contract here involved required the court to submit to the jury the question of whether it was fair, just, and reasonable, and for the purpose of securing a due proportion between the amount of the carrier's liability and the compensation to be received for the carriage, then the court was plainly in error in refusing to submit such question to the jury; but if, on the other hand, it appears that under the facts such was not the case, that the contract was not fairly entered into with freedom of choice, that the valuation was arbitrary and plainly for the purpose of limiting the carrier's liability, and all this to such extent that if the question had been submitted, and the jury had found to the contrary, the verdict could not have been sustained, then the defendant cannot now complain of the failure to submit. This is the general test of the propriety of refusing to submit questions of fact to the jury, and when it is applied to the facts of this case there can be, we think, but one result, and that is that, under the rule announced

in Ostroot v. Northern Pacific Ry. Co. supra, the action of the trial court must be sustained. It is clear from the case last cited that this court is not prepared to sustain all limited liability contracts regardless of the circumstances under which they were entered into (see also O'Connor v. Great Northern Ry. Co. 118 Minn. 223, 228, 136 N. W. 743; O'Malley v. Great Northern Ry. Co. 86 Minn. 380, 382, 90 N. W. 974); and yet, if this contract is to be sustained, it is difficult to conceive of any state of facts under which such a contract would not have to be upheld, except in case of fraud or duress. Our conclusion is that the trial court did not err in holding that the special contract did not limit the plaintiff's right of recovery in the matter of the value of the horses.

4. The defendant complains of the court's instructions concerning contributory negligence, and of its failure to instruct as requested by the defendant. The court, however, did charge, in effect, that the defendant would not be liable if Mattson contributed to the loss by negligence in looking after the horses or in caring for them after they were loaded. Furthermore, a special interrogatory was submitted to the jury upon this question, and the jury returned a special verdict negativing negligence in such regards.

From the defendant's brief we gather that it was claimed on the trial that the evidence warranted a finding that Mattson allowed a drunken friend to go into the car for the purpose of stealing a ride, and that such act was the proximate cause of the plaintiff's loss. The burden of proof to establish this was upon the defendant, and it is very doubtful whether the record contains sufficient evidence to warrant any such conclusion. However, evidently on this theory, the court, at the defendant's request, instructed the jury that "if Mattson knowingly permitted anyone to go into the car for the purpose of stealing a ride, or while loading negligently allowed anyone to go into the car for that purpose, and the car was set on fire and the horses destroyed by reason of Mattson's doing so, your verdict must be for the defendant." This would seem fairly to cover the defendant's theory in this regard in any event.

The defendant also assigns error upon the failure to give the following instruction requested by it: "You are instructed that, according

to the testimony on behalf of the plaintiff, Mattson was to load the horses and go with them to Stillwater. If you find that it was the understanding and agreement of the plaintiff and defendant that Mattson should care for the horses while in defendant's possession, and you should further find that Mattson negligently failed to properly care for the horses, and that as a result of Mattson's negligence the horses were destroyed, your verdict must be for the defendant."

We are of the opinion that the instructions given fairly covered the one requested, especially in view of the special interrogatory and the verdict thereon. We find no reversible error upon the issue of contributory negligence, in which connection, furthermore, it must be remembered that the record affirmatively shows that most of the evidence relative to the cause of the fire and responsibility therefor has been omitted.

5. Some other errors are assigned, but we find nothing requiring further comment. Upon the whole case, we are of the opinion that, notwithstanding that the case was tried and submitted upon erroneous theories in some respects, yet the defendant was liable as a matter of law, under the proofs, for the reasonable value of the horses at the time of their destruction, unless the same was caused or contributed to by the negligence of the plaintiff's agent, and upon this issue it must be held, so far as can be ascertained from the record, that the jury properly found in favor of the plaintiff.

Order affirmed.


BUNN, J., took no part.   .