**DAVIS, Director General of Railroads, v. GUITAR.  (No. 10071.)**

(Court of Civil Appeals of Texas. Fort Worth. Dec. 1, 1922. Rehearing Denied Jan. 13, 1923.)

Carriers ⊙⊃76—Seller of oil held not entitled to sue railroad for losses occasioned by failure to notify of arrival of tank cars.

Where one contracted to sell cotton seed oil at the market price on the day it was loaded in tank cars of the purchaser and the railroad for five days failed to notify of the arrival of such cars, during which time the price dropped, *held* the seller had no such interest in the contract between the purchaser and the railroad concerning the delivery of the cars as would entitle him to sue for the negligent failure to notify.

Appeal from District Court, Taylor County; W. R. Ely, Judge.

Action by John Guitar against James C. Davis, Director General of Railroads. From a judgment for plaintiff, defendant appeals. Reversed and judgment rendered for defendant.

Wagstaff, Harwell & Wagstaff, of Abilene, for appellant.

Dallas Scarborough, of Abilene, for appellee.

BUCK, J. John Guitar sued the Director General of American Railways for damages, alleging that plaintiff had sold to Morris and Company cotton seed oil, "price to be market on date of arrival and loading of tank cars at plaintiff's place of business," at Abilene, Tex. That Morris & Co. forwarded to Abilene one certain oil tank car of the capacity of 60,000 pounds, the car reaching Abilene February 20, 1920, but that the defendant failed to notify plaintiff of such arrival until February 25th; that on the 20th of February the market value of the oil which plaintiff had to sell was 21 cents a pound, and on the 25th it was 18 cents a pound. He sued for $1,800, alleging negligence on the part of defendant in failing to notify him promptly of the arrival of the car. The cause was tried before the court without the intervention of a jury, and a judgment was rendered for plaintiff in the sum of $650, from which defendant has appealed.

Only one question is presented. Defendant pleaded that plaintiff was not entitled to recover special damages, in that (1) the petition failed to allege any notice to defendant of the alleged contract between plaintiff and Morris & Co. at the time of the making of the contract between Morris & Co. and defendant; and (2) that the facts pleaded showed that no privity of contract existed between plaintiff and defendant by reason of the contract between Morris & Co. and defendant, and that such contract was not made for the benefit of plaintiff, but that in fact plaintiff is shown to be a stranger to such contract, and not entitled to recover by reason of its alleged breach. The court overruled defendant's special exceptions setting up these defenses, and the appellant has presented assignments of error based on such rulings.

John Guitar testified:

That he had lived in Abilene since 1898, and for the past 12 years had been operating in the cotton seed oil business under the firm name of the Continental Oil & Cotton Company; that "the custom and manner of the railroad in handling cars" during the time plaintiff had been in business, "when I would sell any cotton seed oil, well, the buyer always furnished the empty tank cars in which to load. The buyer, or the man who buys the oil, sends a tank car to take the oil in. As soon as the car comes in that we are to load the oil in, the cars are set on one of the defendant's switches. As soon as the car comes in they usually phone us, and set the car or place the car the same day for loading; that's customary."

Nowhere does plaintiff show that defendant agreed to notify him of the arrival of the empty car, or that he inquired of the railroad company during these five days as to whether or not the car had arrived. From the deposition of Ernest Kissling department manager of Morris & Co., at Chicago, it is shown that the car in question was sent from Oklahoma City by Morris & Co. to the Continental Oil & Cotton Company at Abilene, December 27, 1919. On January 28, 1920, Morris & Co. wired the Continental Oil & Cotton Company to know if certain tank cars, including the one in question, had arrived, and the plaintiff replied they had not. On February 24, 1920, Morris & Co. wired plaintiff that the railroad reported that car 10012, the car in question, had arrived, and if plaintiff wanted to load it with cotton seed oil of a specified quality at 18 cents a pound, to do so; otherwise to divert the car to Greenville, Tex.

We have concluded, after careful investigation of the authorities, that plaintiff below showed no such interest in the contract of transportation between Morris & Co. and the

⊙⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

railroad as would entitle him to sue for the alleged negligence upon which he predicates his cause of action. 10 Corpus Juris, 352, § 521 says:

"Where a consignee has no special or general property in goods consigned to him and incurs no risk in their transportation, he cannot maintain an action against the carrier for loss or injury to the goods."

To the same effect are Hutchinson on Carriers, §§ 1304, 1320, and other authorities cited in Grinnell-Collins Co. v. Illinois Cent. Ry. Co., 109 Minn. 513, 124 N. W. 377, 26 L. R. A. (N. S.) 437; Cudahy Packing Co. v. Dorsey, 26 Tex. Civ. App. 484, 63 S. W. 548. In Pennsylvania Steel Co. v. N. Y. City Ry. Co., 198 Fed. 721, 749, 117 C. C. A. 503, 531, Circuit Judge Noyes says:

"In England and in some of the states the rule is adhered to that the only persons who can sue upon a contract are the parties; that a third person for whose benefit a contract is made cannot maintain an action upon it. The reason for the rule is said to be that there is no privity between the contracting party making the promise and the third person and that the consideration does not move directly from the latter. The rule has the merit of simplicity but is calculated to permit injustice. It is founded, too, upon wholly artificial distinctions. There is no real and substantial reason why, if the parties to a contract recognize the interest of a third person in it and desire and intend to give him a right of action upon it, they should not be able to do so. And the prevailing doctrine in this country is contrary to the English rule. It is generally held, subject to qualifications, that a third person may sue upon a promise made to another for his benefit. Sometimes the right is placed by the courts upon provisions in Codes giving the 'real party in interest' the right to prosecute suits. Sometimes it is based upon the theory of a trust; the promisor being regarded as trustee for the third party. Sometimes it is based upon the theory of agency; the promisee in the contract being considered the agent of the third party who adopts his acts in suing upon the contract. But whatever may be the correct theory, one thing is essential to the right and that is that the third person be the real promisee—that the promise be made to him in fact although not in form. It is not enough that the contract may operate to his benefit. It must appear that the parties intend to recognize him as the primary party in interest and as privy to the promise.

"In Austin v. Seligman (C. C.) 18 Fed. 522, Judge Wallace said: 'According to good sense and upon principle there is no reason why a person may not maintain an action upon a contract although not a party to it, when the parties to the contract intend that he may do so. The formal or immediate parties to a contract are not always the persons who have the most substantial interest in its performance. Sometimes a third person is exclusively interested in its fulfillment. If the parties choose to treat him as the primary party in interest, they recognize him as a privy in fact to the consideration and promise. And the result of the better considered decisions is that a third person may enforce a contract made by others for his benefit, whenever it is manifest from the nature or terms of the agreement that the parties intended to treat him as the person primarily interested.'"

See Simkins on Contracts, 393; Continental Bank & Trust Co. v. Hartman (Tex. Civ. App.) 129 S. W. 179, and Beaumont S. L. & W. Ry. Co. v. Moore (Tex. Civ. App.) 174 S. W. 844, writ denied. We think the last-cited case, while different in some of its elements from the one at bar, enunciates rules of law decisive of this appeal. In this case the following language is used:

"There is another obvious reason for holding that the appellant is not liable for the damages claimed by appellee. Such damages are special in their nature, not such as would usually and probably result from delay in the transportation of timber, and, if appellant owed a duty to appellee to furnish more cars and to more promptly transport the loaded cars from said spur, it could not be held liable for the damages claimed by appellee for its failure to perform this duty because it had no notice of the contract between appellee and the lumber company and no knowledge of the facts which would make the damages claimed by appellee the probable result of such failure on the part of appellant. Calvit v. McFadden, 13 Tex. 324; Express Co. v. Darnell, 62 Tex. 640; Railway Co. v. Belcher, 89 Tex. 428, 35 S. W. 6."

There is in the instant case no allegation and no proof that the defendant at the time of the contract between the railway company and Morris & Co. knew or had notice of any facts which would make the damages alleged to have been suffered by appellee the probable result of the failure of the railway company to promptly notify plaintiff of the arrival of the tank car.

In our judgment, the judgment rendered below should be reversed, and judgment here rendered for appellant; and it is so ordered.